# IN THE COURT OF APPEALS OF IOWA

No. 24-0169
Filed September 4, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DILLON MICHAEL HEILLER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Allamakee County, John Bauercamper, Judge.


A defendant challenges his convictions for theft in the first degree and theft in the second degree. **AFFIRMED.**


Shea M. Chapin of The Chapin Center, PLC, Dubuque, for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney General, for appellee.


Considered without oral argument en banc.

**AHLERS, Judge.**

In the early morning of June 19, 2023, a farm owner notified law enforcement that a Chevrolet Captiva with Wisconsin license plates had crashed into a tree at the caller's residence. A short distance down the road from that residence, a John Deere Gator utility vehicle was stolen from a second farm. The Gator was found crashed at a third farm a few miles away. At the farm where the Gator was crashed, a 2013 Chevrolet Impala was missing.

An investigation revealed that Dillon Heiller was driving the Captiva just before it crashed at the first farm, and his blood was found on a bandana left in the crashed Gator. The State charged Heiller with theft in the second degree for the Captiva and theft in the first degree for the Gator. The jury found him guilty of both crimes,[1] and the district court sentenced him accordingly. Heiller appeals.

## I.      Territorial Jurisdiction—Theft of the Captiva

Heiller challenges his conviction for theft of the Captiva on the ground that the State failed to prove he took possession of the vehicle in Iowa. He points out that territorial jurisdiction is an essential element of a crime that the State is required to prove beyond a reasonable doubt. *See State v. Liggins*, 524 N.W.2d 181, 184–85 (Iowa 1994). But, while Heiller attempts to frame the issue as a challenge to the sufficiency of the evidence of territorial jurisdiction, the substance of his argument is a complaint about the jury instructions. In particular, he complains about this marshaling instruction given to the jury:

---

[1] The State also charged Heiller with theft of the Impala and being a felon in possession of a handgun in the Impala. The jury found him not guilty of those crimes. As the issues on appeal do not involve those charges, we will not address them further.

The State must prove all the following elements of [second] degree theft:
1. On or about the 19th day of June, 2023, the defendant took possession or control of [a] 2012 silver Chevrolet Captiva. . . .
2. The defendant did so with the intent to deprive the owner of the 2012 silver Chevrolet Captiva. . . .
3. The property, at the time of the taking, belonged to or was in the possession of its owner.

Heiller argues that this marshaling instruction was erroneous because it "did not require a finding that the offense was committed wholly or partly within the State of Iowa." Heiller argues that by failing to require the State to prove an essential element of the offense beyond a reasonable doubt, the instruction violated his constitutional due process rights.

But there are two interrelated problems for Heiller. First, jury instructions to which no objection is lodged become the law of the case for purposes of a sufficiency challenge. *See State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024). Heiller made no substantive objection to the jury instructions, including the marshaling instruction at issue, so they became the law of the case. As the marshaling instruction contained no territorial-jurisdiction element, Heiller's attempts to make his territorial-jurisdiction argument a sufficiency challenge fail.

In substance, his territorial-jurisdiction challenge is to the failure of the marshaling instruction to include a territorial-jurisdiction requirement. This leads to Heiller's second problem. To challenge a jury instruction, Heiller was required to object to it to preserve error. *See State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) ("We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review." (quoting *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988))); *see also*

*State v. Brammer*, No 24-0127, 2025 WL 52854, at *6 (Iowa Ct. App. Jan. 9, 2025) (requiring a defendant to object to a marshaling instruction related to territorial jurisdiction to preserve error). And the fact that Heiller attempts to turn the claimed faulty instruction into a constitutional issue does not help him because constitutional objections also must be made to the district court to preserve error. *See State v. Tucker*, 982 N.W.2d 645, 653 (Iowa 2022) ("Litigants may not raise issues—including constitutional issues—for the first time in an appeal.").

As Heiller made no objection to the marshaling instruction's failure to include a territorial-jurisdiction element, he has not preserved his substantive or constitutional challenges to the instruction on appeal. We reject his territorial-jurisdiction challenge accordingly.

The only way Heiller could avoid this outcome is if he could persuade us that territorial jurisdiction is a question of subject matter jurisdiction. If it is, then the challenge can be raised for the first time on appeal, even if Heiller never presented the issue to the district court. *See State v. Ambrose*, 861 N.W.2d 550, 561 (Iowa 2015) (addressing an issue of subject matter jurisdiction on appeal even though the issue was not raised below). And we would have to vacate Heiller's conviction because we cannot say that the jury found beyond a reasonable doubt that the requirements of the territorial-jurisdiction statute were met here even if it is possible the facts would support such a finding. *See Liggins*, 524 N.W.2d at 184–85 (finding territorial jurisdiction to be "an essential element of the crime" to be "submitted at trial" and proved "beyond a reasonable doubt" unless "the jurisdictional facts are undisputed").

To answer the question of whether Heiller's territorial-jurisdiction challenge is one of subject matter jurisdiction, we look to our case law. Our court has marginally weighed in on the topic. In *State v. Bradley*, we found territorial jurisdiction to be a question of subject matter jurisdiction—at least in the context of requiring a defendant to pay restitution related to a crime prosecuted in Missouri. 637 N.W.2d 206, 214 (Iowa Ct. App. 2001), *abrogated on other grounds by State v. Jenkins*, 788 N.W.2d 640, 645–47 (Iowa 2010).

We are not aware of any Iowa Supreme Court case holding that territorial jurisdiction is a question of subject matter jurisdiction. True, in *State v. Rimmer*, the supreme court said, "Challenges to territorial jurisdiction, which go to the power of the court to hear the case, cannot be waived." 877 N.W.2d 652, 663 (Iowa 2016). But this quoted passage says nothing about subject matter jurisdiction— nor does any other part of the *Rimmer* opinion. Further, the quoted passage is dicta. It is a single sentence, buried in paragraphs cataloging the difference between civil personal jurisdiction and criminal territorial jurisdiction only for the preliminary purpose of explaining why the two defendants' reliance on civil precedents had little persuasive value. *Id.* at 661–64. Neither waiver nor subject matter jurisdiction had any bearing on the actual issue decided in *Rimmer*, which addressed the defendants' motion to dismiss for lack of territorial jurisdiction, not subject matter jurisdiction. *Id.* at 661. But even accepting the quoted passage as controlling for the sake of discussion, waiver of an issue is not the same as failing to preserve error. Heiller may not have waived the issue of territorial jurisdiction in the sense that he could still raise his counsel's failure to preserve error by objecting to the jury instructions that did not include a territorial-jurisdiction element as

ineffective assistance of counsel in a postconviction-relief action. So even if the quoted passage from *Rimmer* means Heiller cannot waive territorial jurisdiction, *Rimmer* says nothing about the inability to preserve error on the issue, which is what happened here.

Rather than *Rimmer*, perhaps the closest the supreme court has come to addressing territorial jurisdiction as being an issue of subject matter jurisdiction is *State v. Wagner*, 596 N.W.2d 83 (Iowa 1999). There, the court said,

> The term "jurisdiction" in this sense does not refer to the authority of the Iowa courts "to try an offense of a certain kind." Nor does it refer to the power of the court to try a certain person. Rather, the word jurisdiction in the context of this case refers to the power of the State of Iowa "to create criminal law, especially with respect to the permissible geographical scope of penal legislation." We refer to this aspect of jurisdiction as the State's criminal or territorial jurisdiction.

*Wagner*, 596 N.W.2d at 85 (internal citations omitted). Although the issue of error preservation and subject matter jurisdiction wasn't directly at issue in *Wagner* either, the first sentence of the quoted passage from *Wagner* can be fairly read as a statement that territorial jurisdiction is not subject matter jurisdiction. *See also State v. Mandicino*, 509 N.W.2d 481, 482–83 (Iowa 1993) (holding that alleged lack of authority to extend probation was not a question of subject matter jurisdiction and could be waived, explaining that "[s]ubject matter jurisdiction refers to the power of a court 'to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention'" (citation omitted)).

Based on the above authorities, we conclude that territorial jurisdiction is not a question of subject matter jurisdiction. To the extent our decision in *Bradley*

suggests otherwise, we disavow any language in that opinion equating territorial jurisdiction with subject matter jurisdiction.

Our conclusion is bolstered by practical considerations. If territorial jurisdiction were an issue of subject matter jurisdiction, presumably any conviction entered without a jury finding beyond a reasonable doubt on that element would be void. *See, e.g.*, *Hutcheson v. Iowa Dist. Ct.*, 480 N.W.2d 260, 262 (Iowa 1992) (explaining that "the effect of action taken by a court without jurisdiction of the subject matter is that the action is void" and "remains subject to collateral attack," including "in any proceeding in which the judgment is sought to be enforced"). And the challenge could be raised at any time. *Mandicino*, 509 N.W.2d at 482. The stark impact that comes with a finding of lack of subject matter jurisdiction is presumably a big part of the reason the supreme court painstakingly distinguishes between the question of subject matter jurisdiction and the question of authority over a particular case. *See*, *e.g.*, *State v. Rutherford*, 997 N.W.2d 142, 144–45 (Iowa 2023). Given the Pandora's box that would open were we to conclude otherwise, we are further convinced that territorial jurisdiction is not a question of subject matter jurisdiction.

Territorial jurisdiction is not a question of subject matter jurisdiction, and Heiller failed to preserve his territorial-jurisdiction challenges to the jury instructions. Accordingly, we reject Heiller's territorial-jurisdiction challenge.

## II.  Sufficiency of the Evidence

Aside from his territorial-jurisdiction challenge that we have rejected, Heiller makes sufficiency-of-the-evidence challenges to both charges. Our review is for correction of errors at law, with us viewing the evidence in the light most favorable

to the State. *State v. Sievers*, 20 N.W.3d 203, 207 (Iowa 2025). We are highly deferential to the jury's verdict, and we affirm the verdict when it is supported by substantial evidence. *Id.* Evidence is substantial when rational jurors can be convinced the defendant is guilty beyond a reasonable doubt. *Id.*

## A. Theft of the Captiva

The marshaling instruction for this charge is set forth above, so we will not repeat it. Heiller challenges the sufficiency of the evidence as to the first and second elements.

As to the first element, Heiller does not challenge the fact that he took possession of the Captiva. Rather, he contends the State failed to prove he took possession of it "[o]n or about the 19th day of June, 2023," as evidence was presented that the vehicle was stolen in Wisconsin in early April 2023.

Heiller's challenge fails.

> The law is well settled in this state that the date fixed in the indictment for the commission of a crime is not material, and that a conviction can be returned upon any date within the statute of limitations, if there is no fatal variance between the allegations of the indictment and the proof offered.

*State v. Beltz*, 279 N.W. 386, 388 (Iowa 1938). Heiller makes no claim that the variance in dates placed his crime outside the statute of limitations or that it caused a fatal variance between the allegations in the amended trial information and the proof offered against him. As such, his sufficiency challenge based on the date of the offense fails.

As to the second element, Heiller contends there is no "circumstantial or direct evidence indicating that Heiller *took* possession or control of the Captiva with

the intent to deprive the owner of it."[2] We disagree. A reasonable juror could conclude Heiller took possession or control of the Captiva, and he intended to deprive the owner of it. A witness testified that Heiller drove the vehicle to a bar, where he hung out until between 11:00 and 11:30 p.m. before leaving in the vehicle. This timeline is consistent with a law enforcement officer's testimony that he encountered the vehicle being driven at a high rate of speed after Heiller left the bar in it. It is also consistent with the testimony of the first farm owner, who testified his game camera captured the vehicle driving by the camera at a high rate of speed at 11:55 p.m. on the path that led to the crash into the tree. All these details could lead a rational juror to conclude that Heiller took possession of the Captiva and he did so with the intent to deprive the owner of it.

The jury's finding of guilt as to Heiller's theft of the Captiva is supported by substantial evidence. Accordingly, we reject his sufficiency-of-the-evidence challenge to that charge.

B. Theft of the Gator

The district court gave this marshaling instruction to the jury as to the theft of the Gator:

> The State must prove all the following elements of [first] degree theft:

---

[2] Our supreme court has interpreted the "intent-to-deprive" requirement in Iowa Code section 714.1(1) (2023) to mean an intent to permanently deprive. *State v. Schminkey*, 597 N.W.2d 785, 788–89 (Iowa 1999). Element number two of the marshaling instruction for both charges makes no reference to intent to "permanently" deprive, nor is that concept explained in other instructions. As no objection was made to these omissions from the instructions, the instructions became the law of the case for purposes of Heiller's sufficiency challenge, *see Schwartz*, 7 N.W.3d at 764, so we analyze the sufficiency based on the charge as marshaled for both charges. But, by doing so, we do not endorse the failure to incorporate the concept of permanent deprivation in the jury instructions.

> 1. On or about the 19th day of June, 2023, the defendant took possession or control of the John Deere Gator. . . .
> 2. The defendant did so with the intent to deprive[3] [the owner] of the John Deere Gator. . . .
> 3. The property, at the time of the taking, belonged to or was in the possession of [the owner].

Heiller attacks the sufficiency of the evidence supporting the first two elements.

As to the first element, Heiller admits that his bloody bandana found in the Gator is circumstantial evidence that he was in the Gator but not that he took it. We disagree. Circumstantial and direct evidence are equally probative. Iowa R. App. P. 6.904(3)(o). And there is plenty of circumstantial evidence that Heiller took the Gator. Heiller was seen, alone, leaving the bar in the Captiva that was later crashed at the first farm after he sped up when he encountered a law enforcement vehicle. A short distance away from the crash site, the Gator was taken from the second farm. Heiller's bloody bandana found in the Gator is circumstantial evidence that he is the one who took it. Piecing these items of circumstantial evidence together, a reasonable juror could conclude Heiller fled from law enforcement, crashed the vehicle he was driving, and took the Gator to further his escape. As such, there is substantial evidence supporting the first element, and Heiller's sufficiency challenge to that element fails. *See State v. Miller*, No. 16-2110, 2018 WL 1099580, at *5–6 (Iowa Ct. App. Feb. 21, 2018) (finding sufficient evidence of intent to permanently deprive when the defendant took one vehicle, crashed it, took a second vehicle, and crashed it while trying to flee the area).

As to the second element, Heiller does not contend the evidence fails to establish that whoever took the Gator did so with the intent to deprive its owner of

---

[3] *See* footnote 2.

it. Instead, he reprises his argument as to the first element, contending that, whoever took the Gator with the intent to deprive the owner of it, the evidence is insufficient to establish that he is that person. For the reasons we rejected his similar challenge to the first element, we reject his challenge to the sufficiency of the evidence as to the second element. A reasonable juror could conclude that Heiller is the person who took the Gator, and there is no claim that whoever took it intended to deprive the owner of it, so his sufficiency challenge to the second element fails.

## III.    Conclusion

Heiller failed to preserve error on his challenge to the jury instructions based on a claimed failure to include a territorial-jurisdiction element. Substantial evidence supports the jury's guilty verdict on the two crimes at issue. As a result, we affirm Heiller's convictions.

**AFFIRMED.**

All judges concur except Tabor, C.J., who concurs in part and dissents in part.

**TABOR, C.J. (concurring in part and dissenting in part)**

When the Iowa Supreme Court says that challenges to territorial jurisdiction cannot be waived, I take the justices at their word. *State v. Rimmer*, 877 N.W.2d 652, 663 (Iowa 2016). It doesn't matter whether their declaration in *Rimmer* was dicta.[4] "[D]icta or not, . . . the supreme court's clear statements of the law are binding on this court." *Beeson v. Phelps*, No. 08-1689, 2009 WL 1886070, at *2 (Iowa Ct. App. July 2, 2009). Because the majority's approach disregards precedent from our supreme court, I respectfully dissent in part. I would affirm Heiller's first-degree theft conviction for taking the John Deere Gator, an offense that the State proved occurred in Iowa. But I would reverse his conviction for second-degree theft for taking the Chevrolet Captiva, an offense that occurred in Wisconsin.

First a point of agreement. Like the majority, I don't believe that territorial jurisdiction is a question of subject matter jurisdiction. Subject matter jurisdiction describes a court's power to adjudicate a general class of actions, not just this case. *State v. Yodprasit*, 564 N.W.2d 383, 385 (Iowa 1997). By contrast, territorial jurisdiction "refers to the power of the State of Iowa 'to create criminal law, especially with respect to the permissible geographical scope of penal legislation.'"

_____

[4] Plus, *Rimmer* wasn't the first time that our supreme court discussed the prohibition on waiving territorial jurisdiction. *See State v. Liggins*, 524 N.W.2d 181, 185 (Iowa 1994) (contrasting territorial jurisdiction with venue, "a nonjurisdictional issue"). *Liggins* cited with approval *McKinney v. State*, 553 N.E.2d 860, 863 (Ind. Ct. App. 1990) ("Jurisdiction may not be waived or conferred by consent."), and *State v. Baldwin*, 305 A.2d 555, 559 (Me. 1973) ("Unlike venue, jurisdiction can never be waived nor can it be conferred upon a Maine Court by consent."). *Id.* And even if the statement is not binding, it reflects the supreme court's understanding of territorial jurisdiction, so it should strongly persuade our analysis.

*State v. Wagner*, 596 N.W.2d 83, 85 (Iowa 1999) (citing 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 16.2(a), at 342 (1984)). Phrased another way, territorial jurisdiction limits when a state may "proscribe, prosecute, and punish conduct and consequences occurring at least in part outside its borders." *See* 4 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 16.4(a) (2024) [hereinafter "LaFave"].

But here's where I part ways with the majority. While these two jurisdictional concepts differ, they both constrain the power of courts to resolve a criminal case. "Since territorial jurisdictional limits operate to restrict the subject matter over which the court can exercise authority, they are treated procedurally as presenting issues of subject matter jurisdiction."[5] *Id*. n.2. The hallmark of both subject matter and territorial jurisdiction is that they cannot be waived. *See In re Estate of Falck*, 672 N.W.2d 785, 789 (Iowa 2003) ("Unlike personal jurisdiction, a party cannot waive or vest by consent subject matter jurisdiction."); *Rimmer*, 877 N.W.2d at 663 (contrasting territorial jurisdiction with personal jurisdiction in civil cases which can be established by waiver, consent, or estoppel). It follows from the inability to waive territorial jurisdiction that it can be raised at any time.[6]

_____

[5] Our supreme court has also held that standing is jurisdictional and can be raised at any time. *Schott v. Schott*, 744 N.W.2d 85, 88 (Iowa 2008).

[6] At least one state equates territorial jurisdiction with subject matter jurisdiction. *State v. Williams*, 530 P.3d 919, 927 (Or. Ct. App. 2023) ("[T]erritorial jurisdiction is a type of subject matter jurisdiction."). Several other states treat territorial jurisdiction much like subject matter jurisdiction. *See*, *e.g.*, *Peacock v. State*, 126 N.E.3d 892, 895–96 (Ind. Ct. App. 2019) ("[T]erritorial jurisdiction is a fact that the State must prove beyond a reasonable doubt because jurisdiction 'may not be waived or conferred by consent.'" (citation omitted)); *State v. Streater*, 559 A.2d 473, 475 (N.J. Super. Ct. App. Div. 1989) ("[T]erritorial jurisdiction of this State's courts to convict a person of an alleged criminal offense cannot be waived and may be raised at any time."); *State v. Shrum*, 455 N.E.2d 531, 533 (Ohio Ct. App.

The majority refuses to hold the State to its burden to establish jurisdiction. *See Wagner*, 596 N.W.2d at 85. That burden is rooted in the federal and state constitutions. *See Liggins*, 524 N.W.2d at 184. Instead, the majority construes Heiller's challenge to the sufficiency of the evidence on territorial jurisdiction as "a complaint about the jury instructions." That construction is too narrow. Heiller raises both an objection to the marshalling instruction and a sufficiency argument on appeal. In his sufficiency challenge, he "renews and reasserts" his arguments that the district court lacked territorial jurisdiction over the theft of the Captiva.

In addressing only the jury instruction, the majority anchors its analysis to the concept known as "law of the case." Under that concept, when parties fail to object to a jury instruction at trial, they waive the right to assert error on appeal, and the instruction—right or wrong—becomes the law of the case.[7] *State v.*

1982) ("[T]he question of territorial jurisdiction is so basic that it can be raised at any stage before the trial court or any appellate court, or even collaterally in subsequent and separate proceedings."); *State v. Dudley*, 614 S.E.2d 623, 626 (S.C. 2005) (rejecting notion that extraterritorial jurisdiction is a component of subject matter, but finding that "exercise of extraterritorial jurisdiction implicates the state's sovereignty, a question so elemental that we hold it cannot be waived by conduct or by consent").

A third category are states finding that territorial jurisdiction may be waived. *See, e.g.*, *Jones v. State*, 915 A.2d 1010, 1017 (Md. Ct. Spec. App. 2007) ("[B]y not asking the court to submit the issue of territorial jurisdiction to the jury to decide, by means of an instruction, the appellant failed to preserve this issue for review."); *Commonwealth. v. Leone*, 747 S.E.2d 809, 811 (Va. 2013) ("Territorial jurisdiction, unlike subject matter jurisdiction, can be waived.").

[7] In another permutation, "law of the case" means that "the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals." *State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987). The United States Supreme Court has described the "law of the case" as "an amorphous concept" which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine is flexible.

*Taggart*, 430 N.W.2d 423, 425 (Iowa 1988). Yet exceptions exist. For instance, a claim that trial counsel was ineffective for failing to object to a faulty jury instruction is exempt from the law-of-the-case doctrine. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). Now, of course, Heiller cannot raise a claim of ineffective assistance on direct appeal. *See State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) (upholding constitutionality of Iowa Code section 814.7 (2020)). But he doesn't need to.[8]

First, since territorial jurisdiction cannot be waived, defense counsel's failure to ask for geography to be addressed in the marshaling instruction for the Captiva theft did not constitute waiver. The majority asserts that waiver and failing to preserve error are not the same. Technically that's true. *See Ruiz v. State*, 912 N.W.2d 435, 441 (Iowa 2018) ("The doctrine of waiver applies to issues not asserted on appeal whereas the doctrine of error preservation applies to issues not asserted or decided in the district court."). Yet our supreme court often blends the two concepts. *See*, *e.g.*, *Vagts v. N. Nat. Gas Co.*, 8 N.W.3d 501, 520 (Iowa 2024) ("[E]rror in jury instructions is waived if not raised before closing arguments are made to the jury."); *State v. Middlekauff*, 974 N.W.2d 781, 793 n.3 (Iowa 2022) ("There are concerns as to whether Middlekauff adequately preserved

_____

In other words, it "directs a court's discretion, it does not limit [its] power." *Id*. (quoting *Arizona*, 460 U.S. at 618).

[8] Iowa authority is not explicit that the law-of-the-case doctrine applies when a jury instruction, without objection, omits an essential element of the charged crime. But the United States Supreme Court has addressed the opposite scenario. *See Musacchio v. United States*, 577 U.S. 237, 245 (2016) (finding "doctrine does not bear on how to assess a sufficiency challenge" when a jury convicts after being instructed—without an objection—on all charged elements of a crime plus an additional element).

error or waived this issue."); *State v. Heacock*, 521 N.W.2d 707, 710 (Iowa 1994) ("[E]rror was not preserved and the fundamental rule is that it was therefore waived."); *State v. Childs*, 898 N.W.2d 177, 190 n.8 (Iowa 2017) ("We have on occasion characterized our rules of waiver as rules of error preservation."). Even *Taggart*—cited by the majority—states: "Failure to timely object to an instruction . . . *waives* the right to assert error on appeal, . . . ." 430 N.W.2d at 425 (emphasis added). With waiver off the table, the failure to instruct the jury on territorial jurisdiction did not free the State from proving that element under the law-of-the-case doctrine.[9] *See Liggins*, 524 N.W.2d at 185.

Second, under *State v. Crawford*, Heiller may raise any claims of substantial evidence for the first time on appeal, the rationale being that he contested the sufficiency of the State's entire case by standing trial. *See* 972 N.W.2d 189, 202 (Iowa 2022). Indeed, the State recognizes that *Crawford* means Heiller "may now challenge the sufficiency of the evidence with respect to every element of second-degree theft, including territorial jurisdiction." That's true because territorial jurisdiction is an essential element of every crime that the State must prove beyond a reasonable doubt. *Liggins,* 524 N.W.2d at 184–85.

*Crawford* also answers the majority's "Pandora's box" concerns. Considering Heiller's challenge to territorial jurisdiction does not unleash all

---

[9] Would it have been better practice to instruct the jury on the State's burden to prove that an element of the theft occurred in Iowa? Yes. But "[w]e review instructions as a whole to determine their accuracy, with an eye toward whether other instructions have cured a mistake in a different instruction." *State v. Cooley*, 21 N.W.3d 137, 143 (Iowa 2025). The jury was reminded in Instruction No. 1 that the trial information charged Heiller with four offenses "alleged to have been committed on or about June 19, 2023 in Allamakee County, Iowa."

manner of evil and misery into the legal world. We have "the entire trial record from which to determine the sufficiency of the evidence" including whether the State proved that any of the elements occurred in Iowa. *See Crawford*, 972 N.W.2d at 199. Not reaching this issue is "an abdication of this court's constitutional authority and duty to correct errors at law." *Id*. at 200. The majority entertains the possibility that Heiller could allege in a postconviction relief action that his counsel was ineffective for not objecting to the marshalling instruction. But as our supreme court observed in *Crawford*, "a defendant whose conviction is not supported by sufficient evidence must remain incarcerated or otherwise subject to criminal sanction for additional months or even years until a district court in a postconviction-relief proceeding vacates the defendant's conviction as a claim of ineffective counsel on literally the exact same trial record presented on direct appeal." *Id*.

Third, Heiller did contest territorial jurisdiction in moving for judgment of acquittal. His counsel argued: "[T]here has not been any testimony that these events, in fact, took place in Allamakee County, Iowa." In response, the prosecutor noted: "The trial information that was read at the beginning of trial specifically lists Allamakee County as the place where these events occurred." The prosecutor also insisted, "[E]veryone knows this occurred in Allamakee County." The district court denied the motion for judgment of acquittal, suggesting that any missing testimony about "what county we're in" was "something that could be addressed on an appeal if one were to become necessary."[10]

---

[10] The court's comments appeared to confuse territorial jurisdiction with venue. *See Tull v. Honda Rsch. and Dev., Ltd.*, 469 N.W.2d 683, 685 (Iowa 1991) ("[T]o

Now that the case is on appeal, we must address that missing testimony. Heiller argues that the district court lacked territorial jurisdiction to convict him for taking the Captiva. Heiller is subject to prosecution in Iowa if he committed the theft "either wholly or partly within [Iowa]." Iowa Code § 803.1(1)(a) (2023); *Wagner*, 596 N.W.2d at 86. "An offense may be committed partly within this state if conduct which is an element of the offense, or a result which constitutes an element of the offense, occurs within this state." Iowa Code § 803.1(2).

The marshalling instruction required the State to prove these elements:

> 1. On or about the 19th day of June, 2023, the defendant took possession or control of 2012 silver Chevrolet Captiva. See also Instruction No. 21.
> 2. The defendant did so with the intent to deprive the owner of the 2012 silver Chevrolet Captiva. See also Instruction No. 24.
> 3. The property, at the time of the taking, belonged to or was in the possession of its owner.

All three elements focus on the time of the taking, which occurred in Wisconsin.

Deputy Wilkes testified that the Captiva, which was "wrecked by Koozer's house" near Harpers Ferry, Iowa, was reported stolen in Campbell, Wisconsin, two months earlier. The State acknowledges that Heiller took possession of the Captiva in Wisconsin. But that fact, according to the State, does not preclude Iowa from prosecuting him. Why? Because the State believes "the mens rea element occurred in Iowa." Drilling down, the State argues that Heiller developed the intent to permanently deprive the owner of the Captiva when he crossed state lines and drove recklessly in Iowa.

---

avoid this confusion one should remember that jurisdiction relates to the power to adjudicate, whereas venue is an administrative limitation on where that power should be exercised." (citation omitted)).

But the second element required the State to prove that Heiller *took* the vehicle with the intent to permanently deprive the owner of the property. "The specific intent is linked to the proscribed act and therefore must be present at the time of the proscribed act." *State v. Hanes*, 790 N.W.2d 545, 556 (Iowa 2010). And theft is not a continuing offense. *State v. Hippler*, 545 N.W.2d 568, 573 (Iowa 1996). Thus, Heiller's theft—committed in Wisconsin—was complete at the time of the taking. Because no element of the second-degree theft offense occurred in Iowa, Heiller was not subject to prosecution for that offense in this state. *See* Iowa Code § 803.1(1)(a).

The State has a fallback position. The district court instructed the jury on the lesser included offense of operating a motor vehicle without the owner's consent. The State urges that if we find that it failed to prove that the taking occurred in Iowa, "Heiller's remedy is for the district court to amend the judgment and enter a conviction for operating without consent." Trouble is, neither element of that lesser included offense occurred in Iowa either. The State had to prove:

> 1. On or about the 19th day of June, 2023, the defendant intentionally took possession or control of an automobile belonging to the respective owner. . . .
> 2. The possession or control was without consent of the respective owner. . . .

The State did not offer substantial evidence that either element occurred in Iowa. Without question, Heiller took possession or control of the Captiva in Wisconsin. And, as with theft, the second element had to coincide with the taking. *See Hanes*, 790 N.W.2d at 556; *see also State v. McCormack*, 293 N.W.2d 209, 211 (Iowa 1980) ("The intent element of [operating without the owner's consent]

can exist even in the absence of any permanence in the defendant's purpose in misappropriating the vehicle.").

I would reverse Heiller's second-degree theft conviction and remand for dismissal.